No. 2--08--0155    Filed:  12-31-09

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Boone County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 06--CF--479 |
| EMILIO F. OJEDA, | ) ) | Honorable J. Todd Kennedy, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE BOWMAN delivered the opinion of the court:

At issue in this appeal is whether a high school that is funded by taxes collected from local property owners is considered "public property" for purposes of the aggravated battery statute (see 720 ILCS 5/12--4(b)(8) (West 2006)).  For the reasons that follow, we determine that a public high school is "public property," and, thus, we affirm.

At a stipulated bench trial, the parties agreed that, on November 29, 2006, defendant, Emilio F. Ojeda, used his fist to strike a classmate in the face.  The classmate's face was cut and became swollen.  Defendant and his classmate were in Belvidere High School when this incident occurred. Belvidere High School is funded by taxes collected from local property owners.

The parties disagreed at trial about whether Belvidere High School is "public property" for purposes of the aggravated battery statute.  The State claimed that the high school is "public property" because it is publically funded.  Defendant contended that the high school is not "public

property," because it is accessible only to students and faculty, not the general public. The trial court found that the high school is "public property" because it is publically funded through property taxes. The court found immaterial the fact that admittance to the high school may be restricted, noting that most public buildings now have security measures in place that limit the public's access. The court sentenced defendant to one year of probation, and defendant timely moved for a new trial, arguing that the State did not establish beyond a reasonable doubt that Belvidere High School is "public property" for purposes of the aggravated battery statute. The trial court denied the motion, and this timely appeal followed.

To establish aggravated battery, the State must first prove that the defendant committed a simple battery. That is, the State must establish that the defendant "intentionally or knowingly without legal justification *** cause[d] bodily harm *** or ma[de] physical contact of an insulting or provoking nature with an individual." 720 ILCS 5/12--3 (West 2006). The State must then prove a factor that enhances simple battery to aggravated battery. See 720 ILCS 5/12--4(b) (West 2006). The statute under which defendant was convicted enhances simple battery to aggravated battery if the offense is committed "on or about a public way, public property or public place of accommodation or amusement." 720 ILCS 5/12--4(b)(8) (West 2006). Here, in order to prove defendant guilty of aggravated battery, the State had to establish that the battery occurred "on or about *** public property." 720 ILCS 5/12--4(b)(8) (West 2006).

In interpreting whether this offense occurred "on or about *** public property," we must give effect to the legislature's intent. See People v. Cardamone, 232 Ill. 2d 504, 512 (2009). The best indication of the legislature's intent is the statutory language, which must be given its plain and ordinary meaning. See Cardamone, 232 Ill. 2d at 512. If a term in a statute is not defined, a court

-2-

must presume that the legislature intended that the term be given its ordinary and popularly understood meaning, which may be discerned from the term's dictionary definition. People v. Beachem, 229 Ill. 2d 237, 244 (2008). Moreover, when the statutory language is clear and unambiguous, we must give it effect without resorting to other aids of construction. See Cardamone, 232 Ill. 2d at 512. Because the facts are not in dispute and we are asked to determine whether "public property" as used in the aggravated battery statute encompasses a publically funded high school, we employ the de novo standard of review. People v. Montoya, 373 Ill. App. 3d 78, 81 (2007).

In resolving this appeal, we first define what the legislature meant by "public property." In People v. Kamp, 131 Ill. App. 3d 989, 993 (1985), the appellate court considered whether the evidence presented at trial established that a battery committed in a park occurred on "public property." The court found that it did, hinting that a public entity's ownership of the park did not alone mean that the park was public. Kamp, 131 Ill. App. 3d at 993. Rather, relying on this court's decision in People v. Ward, 95 Ill. App. 3d 283, 286, 288 (1981), the court in Kamp determined that the property must also be accessible to the public. Kamp, 131 Ill. App. 3d at 993.

We agree with Kamp, in that property is not public solely because it is funded by local taxpayers. Rather, "public" also refers to that which is for the public's use. See Black's Law Dictionary 1265 (8th ed. 2004) (defining "public building" as "[a] building that is accessible to the public; esp., one owned by the government"). Here, the stipulated evidence indicated that Belvidere High School is maintained by the government, as local property taxes pay for its operation and maintenance. What is less ascertainable, perhaps, is whether a public high school is for the public's use.

In other circumstances, our supreme court has recognized that public schools are used not only to educate children but, also, to provide space for public functions. See, e.g., Board of Education v. A,C, & S, Inc., 131 Ill. 2d 428, 474 (1989) (recognizing that public schools are "owned by the government, maintained with tax revenue, and used for mandatory classroom attendance as well as for other public functions"). Thus, although public schools are used primarily by students and school faculty, the public does have use of public schools in some way, although that use may be restricted or limited. The issue then becomes whether, in order to be considered "public property" for purposes of the aggravated battery statute, the public's use of the property must be unrestricted and unlimited.

In People v. Childs, 305 Ill. App. 3d 128, 140 (1999), the appellate court observed that a jail and a courthouse are "public property" for purposes of the aggravated battery statute. Childs, 305 Ill. App. 3d at 140. Certainly, if a jail is considered "public property," a public high school, with much less security and fewer rules in place, is "public property." Moreover, much like a courthouse, a public high school has security to keep those inside the facility safe. Courthouses and public schools implement rules that may deny admittance to some, but those rules are in place not to restrict the public's access but to ensure that order is kept.

In similar ways, use of other public property is restricted. Public transportation and public libraries are open to the public, but the use of the services these public facilities provide is conditioned on the public's adherence to stated rules. Services may be denied to those who are disruptive or who present a threat to the safety of others or to the government's property. These limits on the use of public property do not make the property any less "public." See Brugger v. Joseph Academy, Inc., 202 Ill. 2d 435, 443-44 (2002) (noting, for purposes of tort immunity, that

limiting use of public facilities does not mean that a public facility does not benefit the entire community). Accordingly, although it is true that members of the general public do not have unlimited access to a public school, that fact does not remove a public school from the definition of "public property" as intended by the aggravated battery statute.

For these reasons, the judgment of the circuit court of Boone County is affirmed.

Affirmed.

BURKE and SCHOSTOK, JJ., concur.